J-S26027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JORGE LOPEZ | : | |
| | : | |
| Appellant | : | No. 1775 EDA 2017 |

Appeal from the Judgment of Sentence March 23, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012010-2015

BEFORE:   BENDER, P.J.E., BOWES, J., and STEVENS*, P.J.E.

MEMORANDUM BY BOWES, J.:                         **FILED JUNE 18, 2018**

Jorge Lopez appeals from the judgment of sentence of three to six months incarceration followed by four years of probation after he was convicted at a bench trial of possession of a controlled substance and possession with intent to deliver ("PWID").  We affirm.

The trial court offered the following summary of the Commonwealth's evidence, which we have found is supported by the record.

> Officer Erik Pross of the Philadelphia Police Department testified that, on November 7, 2016, beginning at approximately 10:10 a.m., he conducted a plainclothes narcotics surveillance on the 99 block of East Silver Street.  Officer Pross's testimony was based on observations made from his confidential location, which was approximately five hundred (500) feet away from [Appellant's] location; the weather was clear and sunny, and Officer Pross watched [Appellant] engage in transactions with four different men through binoculars for an estimated 45 minutes.
>
> Officer Pross described four nearly identical transactions between [Appellant] and four different buyers[.]  In each case, a white male approached [Appellant] on East Silver Street, engaged

_____
*   Former Justice specially assigned to the Superior Court.

him in conversation, and handed him an unknown amount of United States currency (hereinafter "USC"). Upon receipt of the USC from each of those buyers, [Appellant] walked behind a green minivan,[5] picked up a green Newport cigarette box, removed an item from that box, and handed that item to the purchaser. Throughout the surveillance, Officer Pross never lost sight of [Appellant], and he never saw anyone but [Appellant] approach the Newport cigarette box.

_____

[5] Officer Pross elaborated that as [Appellant] moved "behind" the green minivan, he was moving closer to the officer's surveillance location.

Officer Pross issued flash information to his backup officers after witnessing each transaction, and backup officers were able to stop, search, and arrest each purchaser. When they were arrested, all four purchasers possessed identically packaged suspected narcotics: each pink Ziploc bag contained a blue glassine insert stamped with the word "caution," and inside each glassine insert was a white, powdery substance.

After Officer Pross observed the fourth suspected narcotics transaction, he instructed backup officers to arrest [Appellant]. Officer Wilson, the arresting officer, recovered $141.00 from [Appellant]. Following Officer Pross's instructions, another backup officer seized the green Newport box that Officer Pross observed [Appellant] use during his sales. The Newport box contained ninety (90) pink Ziploc packets that were separated into six bundles of fifteen packets each, and inside each Ziploc bag was a blue glassine insert stamped "caution" that contained a white, powdery substance. At trial, counsel stipulated that the nineteen (19) packets seized from the four buyers and the ninety (90) packets seized from the Newport box all subsequently tested positive for heroin.

Trial Court Opinion, 10/30/17, at 2-3 (citations and some footnotes omitted).

Appellant testified at trial in his defense. He indicated that, on the day in question, he did not work at his landscaping job because it had rained. At approximately 10:00 a.m., he went to the local grocery store, the name of which he did not know, and ordered a cheesesteak sandwich. While he was

at the counter paying, police officers came in and arrested him for no reason. Appellant testified that he never sold anyone drugs on that day. N.T., 1/18/17, at 30-35. Further, Appellant offered the stipulated testimony of Julianette Cruz to establish that Appellant has a reputation in the community as a law-abiding citizen. *Id*. at 29.

Following the close of evidence and the arguments of counsel, the trial court found Appellant guilty of possession and PWID on January 18, 2017. Appellant was sentenced as indicated above on March 23, 2017. Appellant filed a timely post-sentence motion,[1] which the trial court denied by order of May 23, 2017. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925. On appeal, Appellant challenges the sufficiency and the weight of the evidence to sustain his convictions. Appellant's brief at 4.

We first consider our standard of review applicable to Appellant's sufficiency challenge.

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the

---

[1] Although titled "Motion for Extraordinary Relief," the motion raised only a weight-of-the-evidence challenge. This motion properly preserved that claim for our review. Pa.R.Crim.P. 720(B).

province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Williams*, 176 A.3d 298, 305-06 (Pa.Super. 2017) (citations and quotation marks omitted).

Appellant does not claim that the Commonwealth failed to establish that the person observed by Officer Pross was guilty of possession and PWID. Rather, he claims that the evidence was not sufficient to prove beyond a reasonable doubt that he was that person. Appellant's brief at 13.

Officer Pross testified that Appellant was the person he witnessed selling heroin to four men. That is sufficient evidence to support the trial court's finding that it was Appellant who possessed and sold the heroin. *Commonwealth v. Johnson*, 180 A.3d 474, 478 (Pa.Super. 2018) ("A [witness's] in-court testimony, identifying the defendant as the perpetrator of a crime, is by itself sufficient to establish the identity element of that crime"); *Commonwealth v. Wilder*, 393 A.2d 927, 928 (Pa.Super. 1978) ("[I]t is settled that a positive identification by one witness is sufficient for conviction.").

Appellant's misidentification arguments more properly go to the weight, not the sufficiency, of the evidence. The following principles apply to our review of that challenge.

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054–55 (Pa. 2013). This standard applies even when the trial judge also rendered the verdict at issue as the finder of fact. ***See***, ***e.g.***, ***Commonwealth v. Konias***, 136 A.3d 1014, 1023 (Pa.Super. 2016) (applying the above standard to a weight challenge following a bench trial).

Appellant argues that the evidence "weigh[s] in favor of concluding that [Appellant] had been called off work that day due to the weather, and he was just trying to enjoy a cheesesteak" when he was arrested at a grocery store. Appellant's brief at 19-20. In particular, in contending that the verdict was against the weight of the evidence, Appellant relies upon his own testimony, the description of the drug dealer Officer Pross related to the arresting officer, the fact that Officer Pross did not observe Appellant the entire time before he was arrested, and that the amount of money recovered from him upon his arrest was less than the street value of the drugs recovered from the buyers.

The trial court rejected Appellant's claim, observing as follows.

> First, [Appellant's] statement that the seller "left the view of Officer Pross" is not supported by any record evidence. To the

contrary, Officer Pross testified that he surveilled [Appellant] from a position on Silver Street, and [Appellant] was arrested on A Street, where Silver Street intersects A Street. When asked on redirect whether he ever lost sight of [Appellant] during his 45-minute surveillance, Officer Pross testified that he did not lose sight of [Appellant]. Although [Appellant] testified that police apprehended him inside a nameless corner grocery store, this is nowhere in the police records, and [Appellant] did not offer any other witnesses to corroborate that officers "threw [him] to the floor" while he was paying at the counter. The trial court did not find [Appellant's] testimony more credible than Officer Pross's account of his surveillance.

Second, [Appellant] overstates his claims that the physical description of the seller does not match what he was wearing when he was arrested; more accurately, [Appellant] has a more detailed description of the clothing he was wearing when he was arrested than what is reflected in Officer Pross's testimony. [Appellant] testified that he was wearing "a Jordan white T-shirt . . . black and red shorts, red socks, and ... white and red shoes." At his attorney's prompting, [Appellant] added that he was wearing a white and red cap. Officer Pross testified that [Appellant] was wearing a white T-shirt, red shoes, and red socks. This information was recorded in the Philadelphia Police Department Arrest Report (commonly referred to as the "PARS Report"). Therefore, Officer Pross's description matches [Appellant's] testimony that he was wearing a white shirt and red socks. The claim that [Appellant] was wearing red and white shoes does not meaningfully contradict the fact that Officer Pross observed [Appellant] wearing red shoes. Although Officer Pross did not specify a color for [Appellant]'s shorts or specify whether or not [Appellant] was wearing a hat, those omissions do not render his identification of [Appellant] inaccurate or suspicious. Officer Pross's physical description of [Appellant], at best, corresponds with [Appellant]'s description of what he was wearing that day, and at worst, does not preclude [Appellant's] more detailed clothing description.

Third, [Appellant] asserted that the $141.00 recovered from his person was inconsistent with the $190 worth of heroin recovered from the four buyers. Assuming *arguendo* that the street value of heroin would be about $10.00 per Ziploc packet and that nineteen packets were recovered from the four buyers, then this does indeed raise questions. Unfortunately for

[Appellant], some of the most obvious explanations fail to shift the weight of the evidence in his favor: What if repeat customers or customers buying in bulk received discounts? Because of the strength of the Commonwealth's testimony of [Appellant's] . . . possession of the heroin and his hand-to-hand transactions with all four buyers, the trial court did not find this alleged price discrepancy to be dispositive.

Fourth, the fact that there were no narcotics found on [Appellant] is entirely consistent with Officer Pross's testimony that [Appellant] was removing drugs from the Newport box stashed behind a nearby car. Again, it fails to shift the weight of the evidence.

Finally, [Appellant] asserts that his own testimony and his proffered character witness also help shift the weight of the evidence. . . . In this case, given Officer Pross's detailed testimony about his surveillance of [Appellant], coupled with the absence of any evidence that Officer Pross had any prior interactions with or bias against [Appellant] or any reason that his observations would be inaccurate due to weather or some other obstruction, the trial court found Officer Pross's testimony to be more credible than [Appellant's]. For the above reasons, the trial court found that none of the reasons offered in [Appellant's] post-trial motion could shift the weight of the large amount of evidence against him, and denied his motion to vacate his convictions.

Trial Court Opinion, 10/30/17, at 9-11.

The trial court's inferences are reasonable and supported by the record. It was the province of the trial court, who observed all of the witnesses, to determine which were credible, and which were not. Accordingly, our review of the record reveals no abuse of discretion on the part of the trial court in holding that the verdict did not shock its conscience, and Appellant is entitled to no relief from this Court on his weight-of-the-evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/18/18</u>